1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10  PERRY GRAVELLE,

11              Plaintiff,

12       v.

13  JUDY KIANDER, et al.,

14              Defendants.

CASE NO. C13-1911JLR

ORDER GRANTING
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

## I.    INTRODUCTION

16       Before the court are two motions:  (1) Defendants Special Agents Judy Kiander

17  and Samuel Huynh's motion for judgment on the pleadings and for summary judgment

18  (Def. Mot. (Dkt. # 30)); and (2) Defendant United States of America's motion for

19  judgment on the pleadings and for summary judgment (US Mot. (Dkt. # 31)).  The court

20  has considered the motions, all submissions filed in support of or opposition to the

21  motions, the balance of the record, and the applicable law.  In addition, the court heard

22

1   the argument of counsel on March 30, 2016.  Being fully advised, the court GRANTS

2   both motions.

3                              II.       BACKGROUND

4       **A.  Mr. Gravelle's Arrest, Alleged Injury, and Medical Treatment**

5           On October 27, 2011, a federal grand jury indicted Mr. Gravelle for two counts of

6   Mail Fraud, one count of Social Security Fraud, one count of Social Security Number

7   Misuse, and two counts of Unlawful Production of Identification Documents.  *See United*

8   *States v. Gravelle*, CR11-0355RSM (Dkt. # 1).  On the same day, United States

9   Magistrate Judge James P. Donohue issued a bench warrant for Mr. Gravelle's arrest.

10  *See id.* (Dkt. # 3).

11          On October 28, 2011, Special Agents Kiander and Huynh arrested Mr. Gravelle at

12  his home.  (Kiander Decl. (Dkt. # 39) ¶ 5.)  According to Special Agents Kiander and

13  Huynh, they arrested Mr. Gravelle without incident and without the use of force.  (*Id.*

14  ¶¶ 6-7; Huynh Decl. (Dkt. # 38) ¶¶ 2-4; *see also* Beck Decl. (Dkt. # 33) ¶¶ 4-9, Ex. A.)

15  They then transported Mr. Gravelle to the office of the United States Marshals Service at

16  the Federal Courthouse in Seattle, Washington for his initial appearance.  (Kiander Decl.

17  ¶ 9; Huynh Decl. ¶ 5.)

18          Mr. Gravelle's account of his arrest differs sharply from the account of the Special

19  Agents, and on October 23, 2013, Mr. Gravelle initiated a lawsuit alleging a variety of

20  claims arising out of his arrest and detention.  (*See* IFP Mot. (Dkt. # 1); Compl. (Dkt.

21  # 3).)  On May 1, 2014, he filed an amended complaint.  (Am. Compl. (Dkt. # 12).)  Mr.

22  Gravelle contends that when he was arrested, Special Agent Huynh, at the direction of

1    Special Agent Kiander, forced shackles onto Mr. Gravelle's ankles and repeatedly pushed

2    his feet into the Agents' car, breaking his right foot and causing other damage to his right

3    foot and ankle.  (*Id.* ¶¶ 10-20.)  Mr. Gravelle testified that Special Agent Huynh "forced

4    [his] feet and ankles under the seat in front of [him]," and he "felt a 'snap' and great pain

5    which [he] immediately complained of to the [Special] [A]gents."  (Gravelle Decl. (Dkt.

6    # 43-2) at 2.)  Mr. Gravelle alleges that he takes "four medications to deal with normal

7    swelling in [his] ankles and legs as a consequence of diabetes and a heart condition."

8    (Am. Compl. ¶ 11.)  He asserts that "[a]lmost immediately after the shackles were

9    closed" his feet and ankles "began to swell noticeably," and he "began to lose feeling in

10   the feet and ankles."  (*Id.* ¶ 12.)  He alleges that by the time he arrived at the Federal

11   Courthouse to make his initial appearance he was suffering from broken bones and pulled

12   ligaments in his right foot and ankle, swelling in both feet, and the first stages of insulin

13   shock because he had not eaten since taking his insulin injection.  (*Id.* ¶¶ 20-21; *see also*

14   Gravelle Decl. at 1.)

15        Later that same day, Special Agent Kiander received a call from the United States

16   Marshals Service indicating that Mr. Gravelle was ill and needed to be taken to the

17   hospital.  (Huynh Decl. ¶ 6; Kiander Decl. ¶ 10.)  Mr. Gravelle alleges that by this time

18   his feet had swelled to "4 times their normal size."  (Am. Compl. ¶ 23.)  He also alleges

19   that while he was at the Federal Courthouse a guard forced a shoe onto his right foot "and

20   in the process tore the toenail off the big toe and the toe next to it, filling [his] shoe with

21   blood."  (*Id*. ¶ 23.)  Special Agents Huynh and Kiander returned to the United States

22   courthouse and transported Mr. Gravelle to the hospital where he received treatment for

1    his diabetes.  (Huynh Decl. ¶¶ 6-7; Kiander Decl. ¶¶ 10-11.)  Mr. Gravelle testified that

2    by the time he reached the hospital, he was suffering from confusion due to his diabetes

3    and was unable to discuss all of his problems with his medical service providers.  (*See*

4    Gravelle Decl. at 1.)

5           At the hospital, Mr. Gravelle was examined by an emergency room physician who

6    concluded that Mr. Gravelle's blood glucose levels were such that he was no longer

7    hypoglycemic.[1]  (Gugin Decl. (Dkt. # 45) ¶ 2, Ex. A at 21:1-25.)  Mr. Gravelle never told

8    the emergency room physician that he was in pain or that he thought he had injured his

9    feet or ankles.  (Morehead Decl. (Dkt. # 32) ¶ 3, Ex. B ("Doten Dep. I") at 19:8-18; 23:3-

10   13.)  The emergency room physician reported that Mr. Gravelle was "in no distress" and

11   "looked comfortable."  (*Id.*)  The physician examined Mr. Gravelle's bare feet and saw

12   no sign of a broken foot, other injury, or swelling.  (*Id.* at 23:14-25:25.)  When the

13   physician touched Mr. Gravelle's feet, Mr. Gravelle did not grimace or indicate that it

14   hurt for the doctor to touch his feet.  (*Id.* at 23:3-13, 25:17-25.)  The physician noted the

15   Mr. Gravelle's gait was normal and there were no signs of bruising.  (*Id.* 25:10-16.)  Mr.

16   Gravelle, however, testified that his ankles were swollen from his diabetes which

17   obscured his foot and ankle problems.  (Gravelle Decl. at 1-2.)

18          After Mr. Gravelle was examined at the hospital, it was too late in the day for him

19   to make his first appearance in court, so the Special Agents transported Mr. Gravelle to

20   the federal detention center ("FDC") in SeaTac, Washington.  (Kiander Decl. ¶ 12;

21   _____

22   [1] Mr. Gravelle had apparently eaten a bagel provided by federal agents.  (Gugin Decl. ¶ 2, Ex. A at 21:1-25.)

ORDER- 4

1    Huynh Decl. ¶ 8.)  At the FDC, Mr. Gravelle was subject to a detailed intake process,

2    which included meeting with a member of the medical staff in a private room.  (*See*

3    Morehead Decl. ¶ 6, Ex. E ("Gravelle Dep.") at 198:6-199:12.)  The records of this

4    appointment indicate that Mr. Gravelle denied having any current painful condition.  (*Id.*

5    at 204:17-23; Dy Decl. (Dkt. # 35) ¶ 3 ("The records . . . show that Mr. Gravelle met with

6    a member of the medical staff during his intake process into [the] FDC . . . on October

7    28, 2011.  The records reflect that at that time, Mr. Gravelle denied any current painful

8    conditions.  There were no signs of trauma noted in his records.").)  Mr. Gravelle testified

9    that he told a member of the FDC medical staff that he was in pain and he chalks up the

10   inconsistency between his testimony and the written record of his intake meeting to

11   "[s]loppy work."  (Gravelle Dep. at 204:17-23.)   Mr. Gravelle made his initial

12   appearance in court on Monday, October 31, 2011, but neither he nor his attorney

13   indicated that he had been mistreated or his foot had been injured.  (*Id.* at 111:6-10);

14   *United States v. Gravelle,* No. CR11-0355RSM (Dkt. # 5).

15         On November 8, 2011, Mr. Gravelle spoke with a medical assistant at his primary

16   care clinic about a diabetes checkup.  (Morehead Decl. ¶ 10, Ex. H ("Wolin Dep.") at

17   15:6-17.)  Mr. Gravelle said nothing about needing urgent medical care; nor did he make

18   any complaint about his feet or ankles during that phone call.  (*Id.* at 15:23-16:13.)  On

19   December 9, 2011, Mr. Gravelle had an appointment with his primary care physician, Dr.

20   Melissa Wolin of the HealthPoint Clinic in Redmond, Washington, concerning his

21   diabetes.  (*Id.* at 21:6-22:16, Ex. 5.)  At the time he made the appointment, he did not

22   indicate any urgent medical need or mention his feet or ankles.  (*Id.*)  During the

1    appointment, Mr. Gravelle did not complain of pain or any injury to his feet or ankles.

2    (*Id.* at 28:13-30:16.)  He did not complain of atypical pain when his doctor touched his

3    feet.  (*Id.* at 35:3-23.)  Mr. Gravelle complained of swelling in his lower extremities,

4    stating that the swelling "got worse after he fell on both of his knees." (*Id.* at 26:16-27:5,

5    Ex. 5 at 1.)  At the appointment, Mr. Gravelle's treating physician observed equal

6    swelling in both of his feet, which is inconsistent with a break in only one foot.  (*Id.* at

7    33:2-22.)  Mr. Gravelle's doctor concluded that the equal swelling in both of Mr.

8    Gravelle's feet was due to Mr. Gravelle's congestive heart failure.  (*Id.*)  Mr. Gravelle's

9    treating physician saw no evidence that any of his toenails had been pulled off, and she

10   would have documented it if she had seen it.  (*Id.* at 35:24-36:5, Ex. 5.)  Mr. Gravelle's

11   doctor saw no indication of a broken bone or other injury to Mr. Gravelle's feet.  (*Id.* at

12   35:3-36:14, Ex. 5.)

13         Mr. Gravelle did not seek medical care for his right foot until January 5, 2012,

14   more than two months after his arrest.  (Gravelle Dep. at 68:1-7; Morehead Decl. ¶ 7, Ex.

15   F ("Munoz Dep.") at 22:1-21, Ex. 8.)  At that time, Mr. Gravelle saw another treating

16   physician, Dr. Xiomara Munoz at the HealthPoint Clinic in Bothell, Washington.

17   (Munoz Dep. at 22:1-21, Ex. 8.) Mr. Gravelle's medical records from that appointment

18   indicate that he told Dr. Munoz that he had injured his foot when he slipped on a rainy

19   day while picking a friend up coming out of prison about two months earlier.  (Munoz

20   Dep. at 23:2-19, Ex. 8 at 1.)

21         Mr. Gravelle visited the HealthPoint Clinic again on March 15, 2012, but this time

22   saw Dr. Jeff W. Brown.  (*Id.* at 36:12-37:9. Ex. 15.)  Mr. Gravelle asked Dr. Brown for a

1   letter supporting his allegation that his right foot was broken on October 28, 2011, at the

2   time he was arrested and allegedly shackled.  (*Id.* at 37:10-23.)  Although Dr. Brown

3   wrote a letter for Mr. Gravelle, the letter does not give an opinion concerning the cause of

4   Mr. Gravelle's foot injury and does not provide the factual support Mr. Gravelle

5   requested.  (*See id.* & Ex. 15.)  Instead, Dr. Brown states that "[e]xamination shows that

6   he does have a Charcot deformity of the right foot consistent with an old fracture," and

7   that "[r]eview of his medical record shows no previous history of right foot deformity."

8   (*Id.* Ex. 15.)  The letter also includes a note from October 1, 2010, "when [Mr. Gravelle]

9   had a full foot exam related to Diabetes care and . . . showed no evidence of deformity."

10  (*Id.*)

11        **B.  Procedural History**

12        Mr. Gravelle filed this action on October 23, 2013.  (*See* IFP Mot.; *see also*

13  Compl.)  He filed an amended complaint on May 1, 2014.  (*See* Am. Compl.)  In his

14  amended complaint, Mr. Gravelle alleges claims based on 42 U.S.C. §§ 1983 and 1988,

15  as well as the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States

16  Constitution.  (Am. Compl. at 1.)

17        On June 23, 2015, Defendants filed their motions for summary judgment.  (*See*

18  Def. Mot.; US Mot.)  On July 13, 2015, Mr. Gravelle filed his combined response to both

19  motions.  (Resp. (Dkt. # 43).)  On July 17, 2015, Defendants filed their consolidated

20  reply memorandum.  (Reply (Dkt. # 44).)

21        On July 21, 2015, Defendants filed a notice of Mr. Gravelle's death.  (Notice of

22  Death (Dkt. # 46).)  On July 22, 2015, the court struck Defendants' motions for summary

1   judgment with leave to re-file, if appropriate, following proper service of the notice of

2   death upon Mr. Gravelle's successors or representatives and completion of the 90-day

3   time period for a motion for substitution of the decedent under Federal Rule of Civil

4   Procedure 25.  (*See* Rule 25 Order (Dkt. # 47).)

5        On January 15, 2016, the court entered an order permitting Personal

6   Representative Don Koler to substitute for the decedent, the parties to conduct limited

7   additional discovery regarding damages, and Defendants to re-note their motions for

8   summary judgment.  (1/15/16 Order (Dkt. # 79).)  Because all the briefing in this matter

9   refers to Plaintiff as Mr. Gravelle, the court continues to do so in this order.  On January

10  19, 2016, Defendants re-noted their motions for summary judgment (Notice (Dkt. # 80)),

11  and those motions are now properly before the court.

12              **III.    ANALYSIS**

13       Defendants have styled their motions as seeking both judgment on the pleadings

14  under Federal Rule of Civil Procedure 12(c) and summary judgment under Rule 56.  (*See*

15  Def. Mot. at 5-6; US Mot. at 2-3.)  However, all parties have submitted declarations in

16  support of their positions.  (*See* Dkt. ## 32-42, 43-1, 43-2, 45.)  Accordingly, the court

17  deems it appropriate to consider Defendants' motions under the standards proscribed for

18  summary judgment.  *See United States v. Duffy*, 550 F.2d 533, 534 (9th Cir. 1977) ("The

19  government filed a motion for judgment on the pleadings, . . . which the trial court

20  considering both the pleadings and the affidavits filed by each party, properly treated as a

21  motion for summary judgment."); *McGlinchy v. Shell Chem. Co.*, No. C-84-0474 SC,

22  1985 WL 25738, at *2 (N.D. Cal. June 7, 1985), *aff'd,* 845 F.2d 802 (9th Cir. 1988) ("It

1  is within the court's discretion whether to accept extranenous [sic] matter on a Rule 12(c)

2  motion and treat it as one for summary judgment.").

3         Defendants move for summary judgment on all of Mr. Gravelle's claims against

4  Special Agents Kiander and Huynh and the United States, including his claims for assault

5  and battery, negligence, and violations of the Fourth, Fifth, Eighth, and Fourteenth

6  Amendments, as well as his claims against the Bureau of Prisons ("BOP"), the United

7  States Marshals Service, and the Social Security Administration ("SSA") based on the

8  Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2401(b), and 2671, *et seq.* (*See*

9  *generally* US Mot.)  Mr. Gravelle filed a single response to Defendants' motions that

10 focuses primarily on his claim that Special Agents Kiander and Huynh employed

11 excessive force during the course of his arrest.  (*See generally* Resp.)

12 **A.  Standards for Summary Judgment**

13        Summary judgment is appropriate if the evidence, when viewed in the light most

14 favorable to the non-moving party, demonstrates "that there is no genuine dispute as to

15 any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

16 P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Torres v. City of Madera*,

17 648 F.3d 1119, 1123 (9th Cir. 2011) ("Summary judgment is appropriate only if, taking

18 the evidence and all reasonable inferences drawn therefrom in the light most favorable to

19 the non-moving party, there are no genuine issues of material fact and the moving party is

20 entitled to judgment as a matter of law.").  The moving party bears the initial burden of

21 showing that there is no genuine issue of material fact and that he or she is entitled to

22 prevail as a matter of law.  *Celotex*, 477 U.S. at 323; *Furnace v. Sullivan*, 705 F.3d 1021,

1   1026 (9th Cir. 2013).  If the moving party meets his or her burden, the non-moving party

2   "must make a showing sufficient to establish a genuine dispute of material fact regarding

3   the existence of the essential elements of his case that he must prove at trial" in order to

4   withstand summary judgment.  *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

5          In judging evidence at the summary judgment stage, the court does not make

6   credibility determinations or weigh conflicting evidence, but rather views all evidence

7   and draws all inferences in the light most favorable to the non-moving party.  *T.W. Elec.*

8   *Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987) (citing

9   *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *see also*

10  *Hrdlicka v. Reniff*, 631 F.3d 1044, 1048, 1051 (9th Cir. 2011); *Motley v. Parks*, 432 F.3d

11  1072, 1075 n.1 (9th Cir. 2005) (en banc); *Miranda v. City of Cornelius*, 429 F.3d 858,

12  860 n.1 (9th Cir. 2005).  However, conclusory testimony in affidavits and motion papers

13  is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill*

14  *Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).  Similarly, "[w]hen

15  opposing parties tell two different stories, one of which is blatantly contradicted by the

16  record, so that no reasonable jury could believe it, a court should not adopt that version of

17  the facts" when ruling on the motion.  *Scott v. Harris*, 550 U.S. 372, 380 (2007); *see also*

18  *Hansen v. United States,* 7 F.3d 137, 138 (9th Cir. 1993) ("When the non-moving party

19  relies on its own affidavits to oppose summary judgment, it cannot rely on conclusory

20  allegations unsupported by factual data to create an issue of material fact.")  As the

21  Supreme Court has stated, "[the] mere existence of a scintilla of evidence . . . will be

22

1   insufficient; there must be evidence on which the jury could reasonably find for the [non-

2   moving party]." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).

3       **B.  Standards for Qualified Immunity**

4       The doctrine of qualified immunity protects government officials "from liability

5   for civil damages insofar as their conduct does not violate clearly established statutory or

6   constitutional rights of which a reasonable person would have known." *Harlow v.*

7   *Fitzgerald*, 457 U.S. 800, 818 (1982).  The qualified immunity standard "gives ample

8   room for mistaken judgments" by protecting "all but the plainly incompetent or those

9   who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).  Qualified

10  immunity is an immunity from suit and all its attendant burdens rather than a mere

11  defense to liability.  It is effectively lost if a case is erroneously permitted to go to trial.

12  *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985).  Qualified immunity serves the

13  important purpose of promoting the efficient operation of government by shielding its

14  employees from the burdens of a trial, which would distract them from their

15  governmental responsibilities, inhibit their discretionary decision making, and generally

16  disrupt day-to-day activity.  *See Harlow*, 457 U.S. at 819; *see also Mitchell*, 472 U.S. at

17  526.

18      In considering a motion for summary judgment based on qualified immunity,

19  lower courts should apply a two-prong test.  *See Pearson v. Callahan*, 555 U.S. 223, 231-

20  32 (2009).  First, did the officer's conduct violate a constitutional right when the facts are

21  viewed in the light most favorable to the party asserting the injury?  *Johnson v. Cty. of*

22  *L.A.*, 340 F.3d 787, 791 (9th Cir. 2003); *see also Saucier v. Katz*, 533 U.S. 194, 201

(2001).  Second, assuming a constitutional right was violated, could the officer nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right?  *Johnson*, 340 F.3d at 791-92; *Saucier*, 533 U.S. at 201-05.  Courts have discretion as to which prong to consider first.  *Pearson*, 555 U.S. at 236.

A clearly established right is one whose "contours . . . must be sufficiently clear that a reasonable official would understand what he [or she] is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  Meeting this standard does "not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2083 (2011).  The court must examine clearly established law "in light of the specific context of the case, not as a broad general proposition."  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

## C.  Fourth Amendment Excessive Force Claim against Special Agents

All allegations that law enforcement officers have used excessive force are examined under the Fourth Amendment and its reasonableness standard, and the framework outlined by the Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989). *Smith v. City of Hemet*, 394 F.3d 689, 700 (9th Cir. 2005).  The Supreme Court has declared that the "reasonableness" inquiry is whether the officer's actions are "objectively reasonable" in light of the facts and circumstances confronting him or her. *Graham*, 490 U.S. at 397.  The court applies *Graham* by first considering the nature and quality of the alleged intrusion, and then considering the governmental interests at stake

1    by looking at:  (1) the severity of the crime at issue, (2) whether the suspect poses an

2    immediate threat to the safety of the officers or others, and (3) whether he is actively

3    resisting arrest or attempting to evade arrest by flight.  *Mattos v. Agarano,* 661 F.3d 433,

4    441 (9th Cir. 2011).  The court's consideration of reasonableness, however, is not limited

5    to these three factors.  Rather, the court must consider the totality of the circumstances

6    and weigh the gravity of the intrusion against the government's interest to determine

7    whether the force employed was constitutionally reasonable.  *See Miller v. Clark Cnty.*,

8    340 F.3d 959, 968 (9th Cir. 2003); *see also Mattos*, 661 F.3d at 441 ("[I]n assessing the

9    governmental interests at stake under *Graham*, we are free to consider issues outside the

10   three enumerated . . . when additional facts are necessary to account for the totality of

11   circumstances in a given case.").

12         Mr. Gravelle asserts that his Fourth Amendment rights were violated when he was

13   handcuffed, his ankles were shackled, and Special Agent Huynh placed him in the

14   backseat of the car and repeatedly forced his feet under the under the front seat.  (*See*

15   Am. Compl. ¶¶ 9-20.)  He asserts that his right foot was broken and that he suffered other

16   injuries at the time, such as pulled ligaments.  (*Id.* ¶ 20.)

17         There is no dispute that the Special Agents handcuffed Mr. Gravelle at the time of

18   his arrest.  The Special Agents' use of handcuffs in this instance was routine and not

19   excessive.  "Indeed, 'courts have recognized that the use of handcuffs in effecting an

20   arrest is "standard practice."'"  *Holland v. King Cty. Adult Det.*, No. C12-0791JLR, 2013

21   WL 3354414, at *15 (W.D. Wash. July 3, 2013) (quoting *Shaw v. City of Redondo*

22   *Beach*, No. CV 05–0481 SVW (FMOx), 2005 WL 6117549, at *7 (C.D. Cal. Aug.23,

2005) (internal quotation marks omitted)); *see also LaLonde v. Cty. of Riverside*, 204 F.3d 947, 964 (9th Cir. 2000) ( "Handcuffing an arrestee is standard practice, everywhere.") (Trott, J., concurring in part, dissenting in part); *see also Brown v. Gilmore*, 278 F.3d 362, 369 (4th Cir. 2002) ("[I]n all events, a standard procedure such as handcuffing would rarely constitute excessive force where the officers were justified, as here, in effecting the underlying arrest."); *Davenport v. Rodriguez*, 147 F. Supp. 2d 630, 637 (S.D. Tex. 2001) ("Merely being handcuffed and taken to the police station . . . is not excessive force, but standard police practice.").  Mr. Gravelle does not allege any injury as a result of the handcuffs.  Thus, the Special Agents' use of handcuffs during Mr. Gravelle's arrest does not support Mr. Gravelle's Fourth Amendment excessive force claim.

Special Agents denying using ankle shackles on Mr. Gravelle, but even assuming they did, the court concludes that it is not an excessive use of force for police to use leg restraints when holding or moving an individual suspected of committing a crime outside of a secure detention facility.  *Haslar v. Megerman*, 104 F.3d 178, 180 (8th Cir. 1997) (concluding "[i]t is eminently reasonable to prevent escape attempts" to shackle pretrial detainees when they are outside the secure detention facility); *Davis v. Back*, No. 3:09cv557, 2010 WL 1779982, at *11 (E.D. Va. Apr. 29, 2010) ("[S]hackling an arrestee in itself is not unreasonable force."); *see also Hoyte v. Wagner*, 2009 WL 215342, at *2 (3d Cir. Jan. 30, 2009) (unpublished opinion finding that use of handcuffs on pretrial detainee in the hospital, where detainee died, was neither excessive or punitive in violation of due process since "officials have a legitimate and important security interest

1  in restraining those in their custody while they receive off-site medical care in unsecured

2  hospitals"); *Crump v. Soloman*, No. 5:07ct03129, 2010 WL 2104178, at * 4 (E.D.N.C.

3  May 20, 2010) (concluding confining inmate in full restraints for 13 hours, while

4  transporting inmate, did not constitute excessive force).  Something more than the Special

5  Agents' use of shackles in transporting Mr. Gravelle is required to constitute a valid

6  claim of excessive force.

7          Mr. Gravelle also claims that Special Agents repeatedly pushed his feet into their

8  car and forced his feet under the car's front seat.  (*See* Am. Compl. ¶¶ 10-20; Gravelle

9  Decl. at 2.)  These allegations, without more, are also insufficient to support a claim for

10  excessive force.  Fourth Amendment jurisprudence recognizes that the "right to make an

11  arrest . . . necessarily carries with it the right to use some degree of physical coercion or

12  threat thereof to effect it."  *Graham*, 490 U.S. 396.  Indeed, "[n]ot every push or shove,

13  even if it may later seem unnecessary in the peace of a judge's chambers, violates the

14  Fourth Amendment."  *Saucier*, 533 U.S. at 209; *see also Hui Son Lye v. City of Lacey*,

15  No. 3:11-CV-05983-RBL, 2013 WL 499815, at *5 (W.D. Wash. Feb. 8, 2013) (granting

16  summary judgment on plaintiff's claim that officers used excessive force when they

17  arrested her for trespassing and shoved her against a car, twisted her arms behind her

18  back and handcuffed her, grabbed her arms and forced her into the car, "pushing her head

19  down as she stepped in").  Absent any injury to Mr. Gravelle, the type of force he

20  describes that the Special Agents used to load him into their car does constitute a Fourth

21  Amendment excessive force violation.  Thus, Mr. Gravelle's Fourth Amendment

22  excessive force claim rests upon his allegations that Special Agents broke and otherwise

ORDER- 15

1    injured his right foot and ankle as they were loading him into their car.  (*See* Gravelle

2    Decl. at 2 ("The agent forced my feet and ankles under the seat in front of me.  I felt a

3    'snap' and great pain which I immediately complained of the [sic] the agents."); Am.

4    Compl. ¶ 20 ("By this time plaintiff was suffering from broken bones and pulled

5    ligaments in his right foot and ankle.").)

6         Special Agents Kiander and Huynh are entitled to summary judgment on Mr.

7    Gravelle's excessive force claim because there is insufficient evidence from which any

8    reasonable juror could conclude that Mr. Gravelle suffered any injury to his feet as a

9    result of his arrest.  As the Supreme Court explained in *Scott v. Harris*, when "the

10   moving party has carried its burden under Rule 56(c), its opponent must do more than

11   simply show that there is some metaphysical doubt as to the material facts. . . . When the

12   record taken as a whole could not lead a rational trier of fact to find for the nonmoving

13   party, there is no 'genuine issue for trial'"  550 U.S. at 390 (quoting *Matsushita Elec.*

14   *Indus. Co. v. Zeinth Radio Corp.*, 475 U.S. 574, 586-87 (1986) (footnote omitted)).

15   Specifically, "[w]hen opposing parties tell two different stories, one of which is blatantly

16   contradicted by the record, so that no reasonable jury could believe it, a court should not

17   adopt that version of the facts for purposes of ruling on a motion for summary judgment."

18   *Id.*

19        In *Scott*, the Court reviewed videotape evidence and found that the plaintiff's

20   "version of events is so utterly discredited by the record that no reasonable jury could

21   have believed him."  *Id.*  Thus, the Court concluded that the law enforcement officer did

22   not violate the Fourth Amendment.  *See id.*  Here, the court comes to the same conclusion

1    based not on videotape evidence, but on overwhelming and undisputed medical records

2    that are entirely inconsistent with Mr. Gravelle's claims of serious injury or even of any

3    injury at all to his feet or ankles as the result of his arrest.  *See also Scottrade, Inc. v.*

4    *Gibbons*, 590 F. App'x 657, 659 (9th Cir. 2014) ("[W]here the 'factual context' of a case

5    'makes the non-moving party's claim implausible, that party must come forward with

6    more persuasive evidence than would otherwise be necessary' to defeat summary

7    judgment.") (quoting *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*,

8    818 F.2d 1466, 1468 (9th Cir.1987)).

9        The emergency room physician who examined Mr. Gravelle on the date of his

10   arrest and who examined his bare feet and observed his gait found no evidence of any

11   injury to his foot or ankle.  (Doten Dep. I at 19:8-18, 23:3-25:25.)  Indeed, the physician

12   noted that Mr. Gravelle was "discharged well appearing, ambulatory."  (*Id.* at 27:25-

13   28:10.)  After Mr. Gravelle's trip to the emergency room, a member of the medical staff

14   at the FDC also examined Mr. Gravelle during his intake process on October 28, 2011.

15   (Dy Decl. ¶ 3.)  Those records reflect that Mr. Gravelle denied any current painful

16   conditions and contain no notations of any signs of recent trauma.  (*Id.*)  Further, Mr.

17   Gravelle's own treating physician examined Mr. Gravelle in December 2011, and found

18   no evidence of an injured foot or ankle.  (Wolin Dep. at 33:2-22, 35:3-36:14.)

19       In addition to the foregoing medical evidence, Defendants submit a report from

20   their expert witness, Dr. Jeffrey Christensen, a doctor of podiatric medicine at the Ankle

21   & Foot Clinics Northwest, P.S.  (Christensen Decl. (Dkt. # 34) Ex. A.)  Dr. Christensen

22   opined that Mr. Gravelle's injuries could not have been caused by improper placement of

ORDER- 17

1   shackles around his ankles or by a person manually twisting Mr. Gravelle's foot.  (*Id.* Ex.

2   A ¶ 2.)  Dr Christensen also opined that the injury Mr. Gravelle suffered more likely than

3   not was caused by a slip and fall.  (*See id.* Ex. A ¶ 1.)  Dr. Christensen further opined that

4   when Mr. Gravelle first sought treatment in January 2012, Mr. Gravelle's description of

5   what caused his foot injuries—that he injured his foot when he slipped and fell—was

6   consistent with the injury to Mr. Gravelle's foot.  (*Id.* ("The [medical] note . . . has a

7   specific subjective description of a slip outside . . . . These chartnote entries correlate well

8   with the known injury pattern that was sustained in this case.").)  Mr. Gravelle has not

9   submitted any expert witness testimony to rebut  Dr. Christensen's opinion.

10          The undisputed medical evidence presented by Defendants conclusively

11   demonstrates that any shackling that may have occurred during Mr. Gravelle's arrest did

12   not cause injury to Mr. Gravelle's feet or ankles.[2]  Although the Ninth Circuit has held

13   that excessively tight handcuffing can constitute excessive force, those holdings issued in

14   cases where "plaintiffs suffered damage to their wrists or hands as a consequence of the

15   _____

16          [2] The only medical evidence to which Mr. Gravelle might point as arguably favorable to
     his position is the March 15, 2012, letter from Dr. Brown, in which Dr. Brown states that his
17   examination of Mr. Gravelle on that day—more than four and half months after Mr. Gravelle's
     arrest—showed "a Charcot deformity of the right foot consistent with an old fracture." (Munoz
18   Dep. Ex. 15.)  The letter also states that a review of Mr. Gravelle's medical records revealed "no
     previous history of right foot deformity."  (*Id.*)  Even viewing this evidence in the light most
     favorable to Mr. Gravelle, no reasonable finder of fact could rely on Dr. Brown's letter to
19   conclude that Mr. Gravelle suffered the types of injuries he alleges to his right foot as a result of
     his arrest on October 28, 2011.  At most, the letter indicates that Mr. Gravelle has Charcot
20   deformity in his right foot that either did not exist at the times he was previously examined at the
     HealthPoint Clinic or that went otherwise undetected.  Dr. Brown's letter is insufficient to raise a
21   genuine issue of material fact that Mr. Gravelle suffered any injury to his right foot as a result of
     his October 28, 2011, arrest or any shackling that he may have experienced at that time.  The
22   letter represents a mere "scintilla" of evidence upon which no reasonable juror could find in Mr.
     Gravelle's favor.  *See Anderson*, 477 U.S. at 252.

ORDER- 18

1    handcuffing." *Ross v. Snohomish Cty.*, No. C13-1467JLR, 2014 WL 1320125, at \*8

2    (W.D. Wash. Mar. 28, 2014).  In contrast, courts in this district have held that dismissal

3    of an excessive force/handcuffing claim is warranted where the plaintiff fails to

4    demonstrate any injury beyond pain.  *Id.*; *Startzell v. Velie*, No. C04-5259RBL, 2005 WL

5    1645802, at \*6-7 (W.D. Wash. July 12, 2005); *see also Rodriguez v. Farrell*, 280 F.3d

6    1341, 1352 (11th Cir. 2002) ("[P]ainful handcuffing, without more, is not excessive

7    force . . . where the resulting injuries are minimal.").

8         In this case, Mr. Gravelle has no medical evidence that he suffered any injury

9    during the course of his arrest.  Indeed, all the medical evidence in this case is to the

10   contrary, and there is a substantial amount of such contrary evidence.  Because the record

11   as a whole so discredits Mr. Gravelle's version of events, the court declines to adopt it for

12   purposes of ruling on Special Agents' motion for summary judgment on the excessive

13   force claim.  *See Scott*, 550 U.S. at 390; *see also Skystad v. Reynolds*, 248 F. App'x 808,

14   811 (9th Cir. 2007) (relying upon *Scott* to affirm the district court's grant of summary

15   judgment in an excessive force case because the medical evidence "directly

16   contradict[ed] [the plaintiff's] version of events"); *Estes v. Sacramento Cty.*, No. 2:13-

17   CV-0946 JAM KJN, 2014 WL 5823089, at \*10-11 (E.D. Cal. Nov. 10, 2014)

18   (disregarding plaintiff's testimony that he suffered a fractured ankle and failed to receive

19   narcotics because his testimony was contradicted by the medical records) (citing *Scott*,

20   550 U.S. at 380).  Accordingly, the court concludes that Special Agents Kiander and

21   Huynh are entitled to summary judgment on Mr. Gravelle's claim of excessive force

22   because no reasonable finder of fact could find in Mr. Gravelle's favor on this claim.

ORDER- 19

### D. Common Law Tort Claims for Assault, Battery, and Negligence Against Special Agents

Mr. Gravelle asserts common law tort claims against Special Agents Kiander and Huynh of assault, battery, and negligence.  (Am. Compl. ¶ 32.)  Special Agents Kiander and Huynh are absolutely immune to any common law tort claims for actions taken within the scope of their employment.  *See Augustine v. McDonald*, 770 F.2d 1442, 1446 (9th Cir. 1985) ("Federal officials enjoy an absolute immunity from liability for common law torts, which shields the official from liability for actions taken within the outer perimeter of the official's line of duty.").  The United States has admitted that Special Agents Kiander and Huynh were acting within the scope of their employment.  (US Answer (Dkt. # 17) ¶ 3.)

Common law tort claims against the United States, its agencies, or its officers acting within the scope of their employment may only be brought under the FTCA, 28 U.S.C. § 2679(b)(1).  The United States is the only proper defendant for an FTCA claim. *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998).  Further, although Mr. Gravelle can pursue claims against Special Agents Kiander and Huynh for violation of his constitutional rights under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 395 (1971), his claims for assault, battery, and negligence are not constitutional claims that can be brought under *Bivens*.  *See Arnold v. United States*, 816 F.2d 1306, 1311 (9th Cir. 1987) (explaining that assault does not constitute an independent federal constitutional cause of action); *Labadie v. United States*, No. C09-1276 MJP, 2011 WL 1376235, at *10 (W.D. Wash. Apr. 12, 2011)

ORDER- 20

1  ("Civil assault, civil battery, and false imprisonment, are not independent constitutional

2  claims actionable under *Bivens*.").  Thus, the court grants Defendants' motion for

3  summary judgment with respect to any alleged common law tort claims against Special

4  Agents Kiander and Huynh.

5      **E.   Claims for Assault and Battery against the United States under the FTCA**

6          Under the FTCA, "[t]he United States shall be liable . . . relating to tort claims, in

7  the same manner and to the same extent as a private individual under like circumstances."

8  28 U.S.C. § 2674.  The law enforcement proviso of the FTCA permits liability against the

9  United States for intentional torts, such as assault and battery, committed by law

10  enforcement officers.  *See* 28 U.S.C. § 2689(h).  Such liability under the FTCA is

11  determined in accord with the law of the place where the act or omission that is the

12  subject of the FTCA action took place.  28 U.S.C. § 1346(b)(1); *see, e.g.*, *Klein v. United*

13  *States*, 537 F.3d 1027, 1030 (9th Cir. 2008).  In this action, therefore, Washington law

14  applies.

15          Washington law defines the tort of assault as the intentional threatened use of

16  force that causes reasonable apprehension of imminent harm.  *Brower v. Ackerley*, 943

17  P.2d 1141, 1144-45 (Wash. Ct. App. 1997).  Battery is defined as an intentional tort,

18  requiring the tortfeasor to intend a harmful touching and requiring the plaintiff to show

19  that there was no consent to the touching.  *Garratt v. Dailey*, 279 P.2d 1091, 1093 (Wash.

20  1955).  Law enforcement officers, however, have a privilege to use reasonable force to

21  effectuate an arrest:  the "use, attempt, or offer to use force upon or toward the person of

22  another is not unlawful . . . (1) Whenever necessarily used by a public officer in the

1  performance of a legal duty . . . ."  RCW 9A.16.020(1); *see also* RCW 9A.16.010(1)

2  (defining "necessary" as "no reasonably effective alternative to the use of force appeared

3  to exist" and "the amount of force used was reasonable to effectuate the lawful purpose

4  intended").  "When assessing the liability of federal law enforcement officers for torts

5  committed in the course of making an arrest, Washington law employs the 'objective

6  reasonableness' standard of the Fourth Amendment."  *Martinez-Rodriguez v. United*

7  *States*, No. C08-0265JLR, 2011 WL 4437010, at *6 (W.D. Wash. Sept. 22, 2011).

8  "Where the use of force is reasonable, a police officer in Washington State is entitled to

9  state-law qualified immunity for assault and battery."  *Id.* (citing *Brooks v. City of Seattle*,

10  599 F.3d 1018, 1031 (9th Cir. 2010)).  Mr. Gravelle has failed to raise a genuine of issue

11  of fact concerning his claim for excessive force under the Fourth Amendment.  *See supra*

12  § III.C.  For the same reasons the court articulated with respect to Mr. Gravelle's Fourth

13  Amendment excessive force claim, the court also grants summary judgment on his claim

14  against the United States under the FTCA for assault and battery.

15  ### F.  Section 1983 and 1988 Claims

16        Mr. Gravelle asserts claims against all Defendants under 42 U.S.C. § 1983.  (Am.

17  Compl. ¶ 31.)  Because a § 1983 claim requires state action, it cannot be maintained

18  against a federal officer.  *Jones .v Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir.

19  1984).  Mr. Gravelle has not alleged that Special Agents Kiander and Huynh acted under

20  color of state law to deprive him of a Constitutional right, nor is there any evidence to

21  support such a contention.  Accordingly, the court grants Defendants' motion for

22

1    summary judgment on Mr. Gravelle's § 1983 claims against Special Agents Kiander and

2    Huynh.

3          Further, neither the United States nor its agencies are "persons" within the

4    meaning of § 1983, and therefore, the United States cannot be sued under this statute.

5    *See, e.g.*, *Jachetta v. United States*, 653 F.3d 898, 908 (9th Cir. 2011).  Because Mr.

6    Gravelle cannot pursue a claim against the Unites States under § 1983, Mr. Gravelle's

7    related claim under 42 U.S.C. § 1988 for attorney's fees is also untenable.  *See* 42 U.S.C.

8    § 1988(b).  Accordingly, the court grants summary judgment on Mr. Gravelle's § 1983

9    claims and his demand for § 1988 attorney's fees against the United States.[3]

10         **G. Other Constitutional Claims Against the United States**

11         Mr. Gravelle alleges that all "Defendants" violated his rights under the Fourth,

12   Fifth, Eighth, and Fourteenth Amendments.  (Am. Compl. ¶ 31.)  The United States has

13   sovereign immunity except when it consents to be sued.  *Untied States v. Mitchell*, 463

14   U.S. 206, 212 (1983).  Mr. Gravelle cannot sue the United States or an agency of the

15   United States for damages for alleged deprivation of a constitutional right in the absence

16   of a waiver of sovereign immunity.  *FDIC v. Meyer*, 510 U.S. 471, 484-87 (1994).  The

17   United States has not waived its sovereign immunity in this regard.  *See Mitchell*, 463

18   U.S. at 212; *Meyer*, 510 U.S. at 478; *Roundtree v. United States*, 40 F.3d 1036, 1038 (9th

19

20

21         [3] Mr. Gravelle is also not allowed attorney's fees under the FTCA.  *See, e.g.*, *Nurse v.

22   United States*, 226 F.3d 996, 1004 (9th Cir. 2000).

ORDER- 23

1   Cir. 1994).  Accordingly, the court grants summary judgment in favor of the United

2   States on Mr. Gravelle's constitutional claims.[4]

3           **H.  Fourteenth and Eighth Amendment Claims Against Special Agents**

4           Mr. Gravelle's claims under the Fourteenth Amendment against Special Agents

5   Kiander and Huynh are not tenable.  A federal law enforcement officer cannot be held

6   liable under the Fourteenth Amendment because the Fourteenth Amendment applies to

7   actions of state rather than federal agents.  *See Betts v. Brady*, 316 U.S. 455, 462 (1942)

8   ("Due process of law is secured against invasion by the federal Government by the Fifth

9   Amendment and is safe-guarded against state action in identical words by the

10  Fourteenth."), *overruled on other grounds by Gideon v. Wainwright*, 372 U.S. 335

11  (1963); *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth

12  Amendment prohibits the federal government from depriving persons of due process,

13  while the Fourteenth Amendment explicitly prohibits deprivations without due process by

14  the several States: 'nor shall any State deprive any person of life, liberty, or property,

15  without due process of law.'" (quoting U.S. Const. amend. XIV) (emphasis in original));

16  *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the

17  Fifth Amendment prohibits the United States, as the Due Process Clause of the

18  Fourteenth Amendment prohibits the States, from depriving any person of property

19  without 'due process of law.'"); *Cobb v. Outlaw*, No. 2:13-CV-115-DPM, 2014 WL

20

21      [4] Although Mr. Gravelle asserts constitutional claims against Special Agents Kiander and
    Huynh under *Bivens*, 403 U.S. 388, Mr. Gravelle may not assert a *Bivens* claim against the
22  United States.  *See, e.g.*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 71 (2001); *FDIC v. Meyer*,
    510 U.S. 471, 486 (1994); *Cato v. United States*, 70 F.3d 1103, 1110 (9th Cir. 1995).

1  4202501, at *1 (E.D. Ark. Aug. 22, 2014) ("[Plaintiff] has no claim under the Fourteenth

2  Amendment through § 1983.  Defendants are federal officers.").  During oral argument,

3  Plaintiff's counsel acknowledged that Plaintiff was no longer asserting this claim.

4       Further, as a pretrial detainee, the Eighth Amendment's prohibition on cruel and

5  unusual punishment is inapplicable to Mr. Gravelle.  *See Bell v. Wolfish*, 441 U.S. 520,

6  536 n.16 (1979).  Accordingly, the court grants summary judgment in favor of Special

7  Agents Kiander and Huynh on Mr. Gravelle's Fourteenth and Eighth Amendment claims.

8       **I.   Fourth Amendment Wrongful Arrest Claim Against Special Agents**

9       Although the allegation is not in his amended complaint, Defendants assert Mr.

10  Gravelle is arguably claiming that Special Agents Kiander and Huynh were negligent by

11  physically arresting Mr. Gravelle rather than sending him a summons to appear.  (*See*

12  Def. Mot. at 13.)  Even assuming that Mr. Gravelle has raised such a claim and that it

13  would otherwise be valid, the court concludes that Special Agents Kiander and Huynh are

14  entitled to qualified immunity in this instance.  When Special Agents Kiander and Huynh

15  arrested Mr. Gravelle, they were doing so pursuant to an arrest warrant that had been

16  issued by United States Magistrate Judge James P. Donohue.  *See United States v.*

17  *Gravelle*, No. CR11-0355RSM (Dkt. # 3).  Special Agents Kiander and Huynh are

18  entitled to qualified immunity because they were executing a facially valid arrest warrant

19  and there are no circumstances indicating that the court should apply any exception here.

20  *See Armstrong v. Asselin*, 734 F.3d 984, 993 (9th Cir. 2013) (noting that where "the

21  search or seizure is executed pursuant to a warrant, the fact that a neutral magistrate

22  issued the warrant is the clearest indication that the officers acted in an objectively

1   reasonable manner"); *see also Smith v. Almada*, 640 F.3d 931, 937-38 (9th Cir. 2011).

2   Accordingly, the court grants summary judgment on this claim to Special Agents.

3   **J.   Fifth Amendment Substantive Due Process Claims Against Special Agents**

4   Mr. Gravelle's amended complaint alleges that Defendants violated his Fifth

5   Amendment Rights.[5]  (*See* Am. Compl. ¶ 31.)  The Fifth Amendment contains two types

6   of constitutional protection:  substantive due process and procedural due process.  *Cty. of*

7   *Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).  Substantive due process includes those

8   rights that are so "fundamental" they are "implicit in the concept of ordered liberty."

9   *Palko v. Connecticut.*, 302 U.S. 319, 325 (1937).  Mr. Gravelle has never asserted that he

10  was denied procedural due process.  The court now considers Special Agents' motion that

11  they are entitled to summary judgment on Mr. Gravelle's Fifth Amendment substantive

12  due process claims.[6]

13  In asserting claims against Special Agents based on the Fifth, Eighth, and

14  Fourteenth Amendments, Mr. Gravelle seems to be claiming that Special Agents were

15

16  _____

17      [5] To the extent that Mr. Gravelle is asserting a Fifth Amendment claim for his alleged
    false arrest, that claim would be duplicative of his Fourth Amendment claim based on the same
18  allegations and would fail for the same reasons set forth above.  *See supra* § III.G.

19      [6] Mr. Gravelle's claim for excessive force must be brought under the Fourth Amendment
    rather than the Fifth Amendment's substantive due process standard.  *See, e.g.*, *Graham*, 490
20  U.S. at 395 ("[A]ll claims that law enforcement officers have used excessive force—deadly or
    not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be
21  analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a
    'substantive due process' approach.").  Thus, Mr. Gravelle's seizure-related or excessive force
22  claims are not cognizable under the Fifth Amendment.

1    deliberately indifferent to his medical needs.[7] (*See generally* Am. Compl.)  Prior to

2    conviction, a federal arrestee's right to adequate medical care derives from the

3    substantive due process clause of the Fifth Amendment rather than the Eighth

4    Amendment's prohibition on cruel and unusual punishment.  *See Bell*, 441 U.S. at 535-37

5    & n.16.  However, "[w]ith regard to medical needs, the due process clause imposes, at a

6    minimum, the same duty the Eighth Amendment imposes: persons in custody ha[ve] the

7    established right to not have officials remain deliberately indifferent to their serious

8    medical needs."  *Gibson v. Cty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)

9    (citations and quotations omitted).

10          Under the Eighth Amendment, prison officials are considered "deliberately

11   indifferent" if they "know[ ] of and disregard[ ] an excessive risk to inmate health and

12   safety."  *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citing *Toguchi v.*

13   *Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quotation omitted)).  "Deliberate

14   indifference 'may appear when prison officials deny, delay or intentionally interfere with

15   medical treatment, or it may be shown by the way in which prison physicians provide

16   medical care.'"  *Id.* (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir.

17   1988)).  The standard "requires that the official be subjectively aware of the risk; it is not

18   enough that the official should have recognized the danger but failed to do so."  *Jeffers v.*

19   *Gomez*, 267 F.3d 895, 914 (9th Cir. 2001).  "The official must be both aware of facts

20

21          [7] As indicated above, Mr. Gravelle cannot assert constitutional claims for damages
22   against the United States, *see supra* § III.G., and so the court considers these claims as they
     relate to Special Agents alone.

1  from which the inference could be drawn that a substantial risk exists, and he must draw

2  the inference."  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (alterations

3  omitted).  Finally, a plaintiff also must show harm caused by the indifference.  *Jett v.*

4  *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

5       **1.  Claims of Deliberate Indifference Concerning Mr. Gravelle's Diabetic Condition and Need for Insulin Against Special Agents**

6

7       Defendants assert that Mr. Gravelle's proffered expert witness opines that Special

Agents negligently failed to transport Mr. Gravelle's insulin to the courthouse with the

8  rest of Mr. Gravelle's medications.  (Def. Mot. at 16.)  Negligence does not rise to the

9  level of a constitutional violation.  *See Jett*, 439 F.3d at 1096 (explaining that an

10  "inadvertent failure to provide adequate medical care alone does not state a claim under

11  § 1983").[8]

12       In any event, there is no evidence of Special Agent's deliberate indifference to Mr.

13  Gravelle's medical needs concerning his diabetic condition or need for insulin.  The

14  evidence before the court is that after Special Agents arrested Mr. Gravelle, they

15  transported him along with a bag of his medicines that Mr. Gravelle had identified to the

16  office of the U.S. Marshals Service at the Federal Courthouse in Seattle, Washington.[9]

17

18  ---

19  [8] The standards are the same for evaluating constitutional claims against municipal officials under 42 U.S.C. § 1983 and against federal agents in a *Bivens* action.  *See, e.g.*, *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991) ("Actions under § 1983 and those under *Bivens*

20  are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*.").

21  [9] Defendants cite to portions of Mr. Gravelle's deposition which purportedly indicate that

22  Mr. Gravelle told officers at the scene of his arrest that his medications were in a cupboard even though he stored his insulin in his refrigerator.  (*See* Def. Mot. at 16-17 (citing Gravelle Dep. at

1   (Kiander Decl. ¶ 9; *see also* Huynh Decl. ¶ 5.)  Mr. Gravelle asserts that he began to go

2   into the first stage of insulin shock because he had taken his insulin for his diabetic

3   condition but had not eaten.  (Am. Compl. ¶ 20; Gravelle Decl. at 1.)  Special Agent

4   Kiander received a call from the U.S. Marshal's office informing him that Mr. Gravelle

5   was ill and needed to be transported to the hospital.  (Kiander Decl. ¶ 10.)  As soon as

6   they received the call, Special Agents Kiander and Huynh transported Mr. Gravelle to

7   Swedish Hospital.  (*Id.*; Huynh Decl. ¶¶ 6-7.)  At the hospital, the emergency room

8   physician determined that Mr. Gravelle was hypoglycemic because he had not eaten after

9   taking his insulin at his house.  (*See* Gugin Decl. Ex. A ("Doten Dep. II") at 21:7-9; *see*

10  *also* Gravelle Decl. at 1 ("The arrest was made before I had dressed.  I had taken by [sic]

11  diabetic medication but hadn't eaten which is a requirement to avoid ill effects from my

12  diabetes.").)  However, once Mr. Gravelle's blood was drawn and tested his blood

13  glucose levels indicated that he was no longer hypoglycemic.  (Doten Dep. II. at 27:10-

14  20.)  The doctor stated that it was his understanding that "the federal agents gave [Mr.

15  Gravelle a] bagel."  (*Id.* at 21-25.)

16      Mr. Gravelle provides no evidence that contradicts the foregoing chain of events.

17  (*See generally* Gravelle Decl.)  Indeed, he provides almost no response to this portion of

18  Special Agents' motion for summary judgment.  (*See generally* Resp.; Gravelle Decl.)

19  The foregoing undisputed facts do not demonstrate that Special Agents had the requisite

20  state of mind or otherwise demonstrate Special Agents' deliberate indifference to Mr.

21

22  153:3-24).)  The court does not rely upon this portion of Mr. Gravelle's deposition because
    Defendants did not provide it to the court.  (*See* Morehead Decl. Ex. E; Gugin Decl. Ex. B.)

Gravelle's medical needs concerning his diabetic condition.  *See, e.g.*, *Flores-Zelaya v. Las Vegas Metro. Police Dep't,* No. 213CV01181JADCWH, 2016 WL 697782, at *10 (D. Nev. Feb. 19, 2016) (explaining that the fact that the plaintiff was acting erratically does not demonstrate that the officers "actually knew about [the plaintiff's] condition and drew the inference that a substantial risk of harm existed"); *Heinemann v. Port of Seattle Police*, No. C12-0966 RSM, 2012 WL 5457172, at *7 (W.D. Wash. Nov. 8, 2012) (granting qualified immunity to officers because there was no genuine issue of material fact as to whether a reasonable officer would have known that denying the plaintiff access to his medications during his arrest and transportation to jail would pose a substantial risk of serious harm).  Accordingly, the court concludes that Special Agents are entitled to qualified immunity with respect to Mr. Gravelle's claim under the Fifth Amendment for deliberate indifference to his medical needs concerning his diabetes and need for insulin and therefore grants summary judgment in favor of Special Agents on this claim.

### 2. Claims of Deliberate Indifference Concerning Mr. Gravelle's Foot and Ankle Injuries Against Special Agents

In his amended complaint, Mr. Gravelle alleges that Special Agents required him to walk into the courthouse following his arrest "despite the injuries to his ankle and foot."  (Am. Compl. ¶ 21; Gravelle Decl. at 2 ("Nothing was done to treat the complained of injuries [to my feet and ankles] and I was required to walk about later while suffering great pain.").)  As discussed above, there is no evidence upon which a trier of fact could conclude that Mr. Gravelle's foot or ankle was injured as a result of his arrest on October

1    28, 2011.  *See supra* § III.C.  The emergency room physician who treated Mr. Gravelle

2    shortly after his arrest examined his feet and found no evidence of any injury.  (Doten

3    Dep. I at 23:14-25:25.)  Special Agents testified that they were unaware of any injury to

4    Mr. Gravelle's foot or ankle.  (Kiander Decl. ¶¶ 10-11; Huynh Decl. ¶¶ 7-8.)  Indeed, the

5    emergency room physician noted that Mr. Gravelle was "discharged well appearing,

6    ambulatory."  (Doten Dep. I at 27:25-28:10.)  If the emergency room physician did not

7    detect any injury to Mr. Gravelle's foot or ankle, Special Agents could not have been

8    deliberately indifferent in failing to detect any injury.

9         Mr. Gravelle's self-serving and uncorroborated declaration of injury to his right

10   foot and ankle is insufficient to withstand summary judgment on this claim.  Where the

11   only evidence presented is "uncorroborated and self-serving" testimony that "is blatantly

12   contradicted by the record, so that no reasonable jury could believe it," the non-moving

13   party has not met its burden of refuting the summary judgment motion.  *Villiarimo v.*

14   *Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Scott*, 550 U.S. at 380; *see*

15   *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) ("A

16   conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is

17   insufficient to create a genuine issue of material fact.").  Here, the undisputed medical

18   evidence establishes that Mr. Gravelle's foot and ankle were not injured on the day of his

19   //

20   //

21   //

22   //

1    arrest.  Special Agents could not be indifferent to a non-existent injury.  Accordingly, the

2    court grants summary judgment in favor of Special Agents on this claim.[10]

3    **K. FTCA Claim Against the United States Based on Alleged Conduct of the**
     **Bureau of Prisons**

4    Defendant United States is entitled to summary judgment on Mr. Gravelle's claim

5    against the BOP both because Mr. Gravelle failed to properly exhaust his administrative

6    remedies and because his claims fail as a matter of law.

7    **1.   Failure to Exhaust Administrative Remedies**

8    Mr. Gravelle's claim against the BOP is brought pursuant to the FTCA, which

9    requires a plaintiff to timely exhaust his or her administrative remedies before proceeding

10   in federal court.  *See* 28 U.S.C. § 2401(b).  Section 2401(b) provides:  "A tort claim

11   against the United States shall be forever barred unless it is presented in writing to the

12   appropriate Federal agency within two years after such claim accrues . . . ."  *Id.*  A claim

13   accrues under the FTCA when the plaintiff is or should be aware of his injury and its

14   immediate cause.  *See, e.g.*, *Hensley v. United States*, 531 F.3d 1052, 1056-57 (9th Cir.

15   2008).  Mr. Gravelle alleges that prison staff at the FDC SeaTac "refused to provide

16   insulin for [his] diabetic condition for the entire day of October 29, 2011."  (Am. Compl.

17

18   _____

19   [10] Mr. Gravelle alleges misconduct by a host of other federal employees that he has never
     identified or served herein.  For example, he alleges that an employee of the U.S. Marshals
     Service ripped off two of his toenails and the Bureau of Prison employees at FDC SeaTac failed
20   to provide him with adequate medical care.  Even assuming the truth of these allegations, they do
     not provide a basis for liability on the part of Special Agents Kiander and Huynh.  A *Bivens*
21   plaintiff must plead and prove "that each Government-official defendant, through the official's
     own individual actions, has violated the Constitution."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 672
     (2009); *see also Pellegrino v. United States*, 73 F.3d 934, 936 (9th cir. 1996) (explaining that
22   *Bivens* liability is premised on proof of direct personal responsibility).

1   ¶ 29.)  Mr. Gravelle was released from BOP custody on October 31, 2011, *see United*

2   *States v. Gravelle*, No. CR11-0355RSM (Dkt. # 5), so any wrongful conduct occurred no

3   later than this date.  Mr. Gravelle failed to present his claim to the BOP until December 3,

4   2013.  (Norris Decl. (Dkt. # 40) ¶ 5.)  Thus, Mr. Gravelle's claim was received by the

5   BOP more than two years after its accrual.

6       Mr. Gravelle nevertheless asserts that his claim against BOP should be deemed

7   constructively filed on time because he also filed a claim with SSA.  (*See* Resp. at 4.)  A

8   local Seattle office of the SSA, rather than the Baltimore office as designated in the

9   regulations, received Mr. Gravelle's claim on October 23, 2013.  (Guy Decl. (Dkt. # 36)

10  ¶¶ 4, 10.)  A federal regulation states that when "more than one Federal Agency is or may

11  be involved in the events giving rise to the claim, an agency with which the claim is filed

12  shall contact all other affected agencies in order to designate the single agency which will

13  thereafter investigate and decide the merits of the claim."  28 C.F.R. § 14.2(b)(2).

14  Although the Ninth Circuit has yet to directly address this argument, other circuits have

15  found that a timely but incorrectly filed claim constitutes proper presentment where the

16  federal agency failed to comply with 28 C.F.R. § 14.2(b)(1).  *See Bukala v. United States*,

17  854 F.2d 201, 203 (7th Cir. 1988).  Defendants, however, assert that any constructive

18  filing based on *Bukala* is not applicable where the claim could not be forwarded to the

19  appropriate agency within the two-year statute of limitations.  "[C]laimants who wait to

20  the last minute or the eleventh hour and file with the wrong agency cannot take advantage

21  of constructive filing."  *Ortiz ex rel. Ortiz v. United States*, No. CIV F03-6541 AWISMS,

22  2007 WL 404899, at *11 (E.D. Cal. Feb. 2, 2007).  There is no bright line rule for

1    determining "the last minute" or "eleventh hour." *Id.*  "Courts have held that claims filed

2    with an inappropriate agency on the final day, . . . one day, . . . three days, . . . eight

3    days . . . , and eighteen days . . . , prior to the expiration of the limitations period were

4    filed at the "last minute" or "eleventh hour" and therefore were time barred." *Id.*

5    (omitting citations).  Even assuming that the date the local SSA office received Mr.

6    Gravelle's claim is the appropriate date upon which to base the court's calculations, only

7    eight days remained until  expiration of the limitations period on October 31, 2013, which

8    was insufficient time for SSA to forward the claim to BOP.  Therefore, Mr. Gravelle's

9    claim against BOP was not constructively filed with SSA.

10          Further, there is no basis for the court to apply equitable tolling.  A plaintiff

11   "seeking equitable tolling bears the burden of establishing two elements:  (1) that he has

12   been pursuing his rights diligently, and (2) that some extraordinary circumstances stood

13   in his way." *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1052 (9th Cir. 2013), *aff'd and*

14   *remanded sub nom. United States v. Kwai Fun Wong*, --- U.S. ---, 135 S. Ct. 1625 (2015).

15   Mr. Gravelle has failed to present any facts in support of equitable tolling.  Indeed, he

16   signed his administrative claim form on October 23, 2013, within the statute of

17   limitations period, and he was represented by counsel at the time.  (*See* Norris Decl. Ex.

18   2.)  Equitable tolling is not available to avoid the consequences of one's own negligence,

19   such as "when a late filing is due to the claimant's failure to exercise due diligence in

20   preserving his legal rights." *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir.

21   1998); *Wong*, 732 F.3d at 1052 ("[A] garden variety claim of excusable neglect, such as a

22   simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant

1    equitable tolling.").  The court concludes that because Mr. Gravelle did not present an

2    administrative claim to BOP within two years of its accrual, any claim he might have

3    against the United States based on the conduct of BOP or its employees is "forever

4    barred."  28 U.S.C. § 2401(b).

5    **2.  FTCA Claims Related to Conduct of BOP Fail as a Matter of Law**

6         As noted above, the United States is liable under the FTCA only if a private

7    person under like circumstances would be liable under Washington law.  *See* 28 U.S.C.

8    §§ 136(b)(1), 2674.  Under Washington law, a claim of negligence requires the plaintiff

9    to show the existence of a duty, a breach of that duty, and an injury proximately caused

10   by the breach.  *See Degel v. Majestic Mobile Manor, Inc.*, 914 P.2d 728, 731 (Wash.

11   1996).  Washington recognizes a jailor's special relationship and duty to inmates to

12   ensure their health, welfare, and safety.  *Gregoire v. City of Oak Harbor*, 244 P.3d 924,

13   927 (Wash. 2010).  Mr. Gravelle alleges that BOP prison staff (1) "refused to provide

14   insulin for [his] diabetic condition for the entire day of October 29, 2011," and (2) failed

15   to adequately train and supervise BOP employees regarding "the provision of necessary

16   medical treatment."  (Am. Compl. ¶¶ 5, 29.)

17        With respect to Mr. Gravelle's first claim against BOP, there is no evidence that

18   BOP failed to provide Mr. Gravelle with insulin on October 29, 2011.  Medical records

19   maintained by the FDC SeaTac regarding the medical care administered to Mr. Gravelle

20   during his detention show that Mr. Gravelle received insulin on October 29, 30, and 31,

21   2011.  (Dy Decl. ¶ 2, Ex. A.)  In addition, during his deposition, Mr. Gravelle admitted

22   that he had received insulin on both October 29 and 30, 2011.  (Gravelle Dep. at 209:5-

1   212:9.)  He also testified that he may have received insulin on October 31, 2011, before

2   he left for his appearance in court.  (*Id.* at 216:5-14.)  Accordingly, the court grants the

3   United States' motion for summary judgment on this claim.

4          With respect to Mr. Gravelle's second claim for inadequate training and

5   supervision, Mr. Gravelle has failed to identify by either name or position the BOP

6   employees he alleges were negligently trained or supervised.  He has conducted no

7   discovery regarding BOP's applicable training or supervision practices.  (Morehead Decl.

8   ¶ 8.)  When asked in written discovery for a description of all acts or omissions that

9   allegedly constitute negligence or a breach of the standard of care, Mr. Gravelle

10  identified nothing related to BOP's training or supervision practices.  (*See id.* ¶ 5, Exs. C,

11  D.)  Finally, in his response to Defendants' motions, Mr. Gravelle never addresses this

12  portion of the United States' motion.  (*See generally* Resp.; Gravelle Decl.)  Absent some

13  evidentiary support for his claim, the conclusory allegations contained in Mr. Gravelle's

14  complaint are insufficient to withstand summary judgment.  *See, e.g.*, *Cafasso v. Gen.*

15  *Dynamics C4 Sys.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment,

16  a plaintiff must set forth non-speculative evidence of specific facts, not sweeping

17  conclusory allegations.").

18         Further, even if Mr. Gravelle had some evidentiary support for his claim of

19  negligent supervision and training, the court agrees with the United States that his claim

20  is barred by the discretionary function exception to the FTCA.  (*See* US Mot. at 12-14.)

21  The discretionary function exception excludes from the FTCA's waiver of sovereign

22  immunity liability based on "an act or omission of an employee of the Government . . .

1   based upon the exercise or performance or failure to exercise or perform a discretionary

2   function or duty on the part of a federal agency or an employee of the Government,

3   whether or not the discretion be abused."  28 U.S.C. § 2680(a).  To determine the

4   applicability of the discretionary function exception, the court must determine:  (1)

5   whether the challenged actions involve an element of judgment or choice, and (2) if a

6   course of action is not specifically prescribed, whether the discretion left to the

7   government is of a kind that the discretionary function exception was designed to shield;

8   namely, actions and decisions based on considerations of public policy.  *Myers v. United*

9   *States*, 652 F.3d 1021, 1028 (9th Cir. 2011).

10          The BOP is responsible for the "management and regulation of all Federal penal

11   and correctional institutions," "the safekeeping, care, and subsistence of all persons

12   charged with or convicted of offenses against the United States . . ." and "the protection,

13   instruction, and discipline of all persons charged with or convicted of offenses against the

14   United States."  18 U.S.C. § 4042(a)(1)-(a)(3).  This provision does "not mandate a

15   specific, non-discretionary course of conduct, but rather leaves the BOP ample room for

16   judgment*." Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) (internal

17   citation omitted).  Further, BOP regulations governing medical services, 28 C.F.R. Part

18   549, set forth no training or supervision requirements for BOP staff.  Considering the

19   wide discretion afforded to the BOP, the first prong of the *Myers* analysis is satisfied.

20          The Ninth Circuit has held the hiring, training, and supervision of employees to be

21   discretionary acts within the discretionary function exception to the FTCA.  *See Nurse*,

22   226 F.3d at 1001-02 (holding that the plaintiff's claims of "negligent and reckless

1    employment, supervision and training of" employees "fall squarely within the

2    discretionary function exception"); *see also Doe v. Holy See*, 557 F.3d 1066, 1084 (9th

3    Cir. 2009) ("[T]he decision of whether and how to retain and supervise an employee is

4    the type of discretionary judgment that the exclusion was designed to protect.").  Here,

5    Mr. Gravelle's claim alleging the United States failed to train or supervise its employees

6    alleges no facts which would remove the United States' purported actions from the

7    discretionary function exception.  In sum, the court grants the United States' motion for

8    summary judgment on this claim because the claim lacks evidentiary support, is barred

9    by the discretionary function exception, and is barred for failure to exhaust administrative

10   remedies.

11   **L.  Claims against the United States Marshals Service**

12          In his amended complaint, Mr. Gravelle alleges that an "unidentified guard" at the

13   United States courthouse in Seattle forced his shoe onto his allegedly swollen foot "and

14   in the process tore the toenail off the big toe and the toe next to it, filling [Mr. Gravelle's]

15   shoe with blood."  (Am. Compl. ¶ 23.)  During his deposition, Mr. Gravelle asserted that

16   an officer of the United States Marshals Service was responsible for this alleged conduct.

17   (Gravelle Dep. at 164:2-165:13.)  Except for remembering that the officer was a male,

18   Mr. Gravelle was unable to describe the unnamed officer by race, ethnicity, or age.  (*Id.*

19   at 134:7-18.)

20          The court grants the United States' motion for summary judgment on this claim on

21   two grounds.  First, Mr. Gravelle never filed an administrative claim with the United

22   States Marshals Service, or with any agency other than SSA, and belatedly with BOP.

1   (*See* Morehead Decl. Exs. C, D.)  In his response, Mr. Gravelle provides no evidence to

2   the contrary.  (*See generally* Resp.; Gravelle Decl.)  For the same reasons that Mr.

3   Gravelle cannot utilize his filing with SSA to assert constructive filing with the BOP, he

4   also cannot utilize his filing with SSA to assert constructive filing with the United States

5   Marshals Service.  *See supra* § III.J.1.  Second, Mr. Gravelle fails to raise a triable issue

6   of fact.  Mr. Gravelle's treating physician, who examined Mr. Gravelle after his arrest in

7   early December 2011, saw no evidence that any of his toenails had been ripped off.

8   (Wolin Dep. at 35:24-36:5.)  Further, she testified that if she had seen evidence of this

9   type of damage to Mr. Gravelle's toenails, she would have documented it in his medical

10  records.  (*Id.*)  There is no mention of any damage to Mr. Gravelle's toenails in his

11  medical records from this provider.  (*Id.* Ex. 5.)  Because the record as a whole, including

12  Mr. Gravelle's own medical records and the testimony of his physician, discredit Mr.

13  Gravelle's claim concerning his toenails, the court declines to adopt Mr. Gravelle's

14  version of events for purposes of ruling on the United States' motion and grants summary

15  judgment in the United States' favor on this claim.  *See* Scott, 550 U.S. at 390.

16        **M.  Claims of Negligence Against the United States under the FTCA**

17        In addition to his assault and battery claim, Mr. Gravelle asserts a common law

18  negligence claim against the United States under the FTCA based on the conduct of

19  Special Agents Kiander and Huynh.  The court addresses each of these possible

20  negligence claims.

21  //

22  //

ORDER- 39

1    **1. Negligent Arrest**

2    Although not alleged in his amended complaint, Mr. Gravelle now asserts that

3    Special Agents Kiander and Huynh were negligent in arresting him rather than sending

4    him a letter or summons to appear in court.  Mr. Gravelle does not dispute probable cause

5    for the arrest.  (*See generally* Resp.)  He provides no support for his contention that

6    Special Agents should have ignored an order issuing a bench warrant duly executed by a

7    United States Magistrate Judge.  *See United States v. Gravelle*, No. CR11-0355RSM

8    (Dkt. # 3).  Indeed, there is no general negligent arrest claim against a law enforcement

9    officer in Washington.  *See Rickert v. City of Poulsbo*, No. C07-5477RJB, 2008 WL

10   271384, at *7 (W.D. Wash. Jan. 29, 2008) (declining to find a cause of action for

11   negligent arrest in Washington).  The United States is liable under the FTCA only if a

12   private person under like circumstance would be liable under Washington law.  28 U.S.C.

13   § 1346(b)(1).  Thus, Mr. Gravelle's claim of negligent arrest cannot be maintained

14   against the United States under the FTCA because there is no corresponding state law

15   cause of action.  In any event, even if there were such a claim, the United States may

16   invoke any defense available to the individual law enforcement officers under the law

17   where the action occurred.  28 U.S.C. § 2674.  In Washington, the facial validity of an

18   arrest warrant is an absolute defense to a claim for false arrest or false imprisonment.

19   *Bender v. City of Seattle*, 664 P.2d 492, 499 (Wash. 1983).  Accordingly, the court grants

20   the United States' motion for summary judgment on this claim.

21   //

22   //

**2. Negligent Failure to Transport Insulin**

Although not alleged in his amended complaint, Mr. Gravelle is apparently asserting that Special Agents negligently failed to secure his insulin and transport it with him to the courthouse at the time of his arrest and that the United States should be held liable under the FTCA for this alleged conduct.  (*See* US Mot. at 16.)  There is no evidence before the court to support this claim.  Even the portions of Mr. Gravelle's deposition where he apparently asserts this claim are not before the court.[11]  In any event, Mr. Gravelle cannot demonstrate any damages based on Special Agents alleged negligence in failing to transport Mr. Gravelle's insulin.  Mr. Gravelle alleges that he experienced a diabetic episode at the United States courthouse following his arrest, not because he lacked insulin, but because he did not eat after taking his insulin that day. (*See* Am Compl. ¶ 20 (alleging that he was suffering from "the first stage of insulin shock because he had not eaten since taking his insulin injection").)  Having access to his insulin so that he could inject even more would not address this issue.  Accordingly, the court grants the United States' motion for summary judgment on this claim.

**3. Negligent in Requiring Plaintiff to Walk**

In his amended complaint, Mr. Gravelle asserts that Special Agents were negligent in requiring Mr. Gravelle to walk into the courthouse and elsewhere "despite the injuries to his ankle and foot."  (*Id*. ¶ 21.)  He claims that the United States should be held liable under the FTCA for this conduct.  However, undisputed evidence warrants the entry of

---

[11] *See supra* note 9.

1  summary judgment in the United States' favor.  As discussed above, there is no medical

2  evidence to support Mr. Gravelle's claim of injury to his right foot or ankle.  *See supra*

3  §§ III.C, III.I.2.  Indeed, the undisputed medical evidence establishes that Mr. Gravelle's

4  foot and ankle were not injured on the day of his arrest.  *See id.*  Special Agents could not

5  be negligent in allowing Mr. Gravelle to walk on an uninjured foot and ankle.

6  Accordingly, the court grants summary judgment in favor of the United States on this

7  claim.

8        **4.  Negligent Training and Supervision**

9        In his amended complaint, Mr. Gravelle asserts a claim against the United States

10  based on "failure to adequately train and supervise the specific employees herein as to the

11  arrest and custody of prisoners and the provision of necessary medical treatment."  (Am.

12  Compl. ¶ 5.)  As discussed above, Mr. Gravelle has produced no evidence to support this

13  claim and the unsupported and vague allegations in his complaint are insufficient to

14  withstand summary judgment.  (*See* Morehead Decl. Exs. C, D); *supra* § III.K.2.  In any

15  event, Special Agents Kiander and Huynh were both trained and supervised.  (Kiander

16  Decl. ¶¶ 4, 13; Huynh Decl. ¶ 9.)  Accordingly, the court grants the United States' motion

17  for summary judgment on this claim.

18                   **IV.    CONCLUSION**

19        Based on the foregoing, the court GRANTS Special Agents Kiander and Huynh's

20  motion for summary judgment on all of Mr. Gravelle's claims (Dkt. # 30).  The court also

21  //

22  //

ORDER- 42

1  GRANTS the United States' motion for summary judgment on all of Mr. Gravelle's

2  claims (Dkt. # 31).[12]

3          Dated this 31st day of March, 2016.

4

5

6          _____
           JAMES L. ROBART
7          United States District Judge

8

9

10

11

12

13

14

15

16

17  _____

18      [12] In his amended complaint, Mr. Gravelle also alleges claims against a number of "Doe"
    defendants.  Although counsel for Special Agents does not represent any of the Doe defendants,
19  counsel nevertheless moved to dismiss the Doe defendants because Mr. Gravelle "failed to
    identify them or allege how any of them personally participated in a deprivation of his rights."
20  (Def. Mot. at 19 n.8.)  In addition, Special Agents move to dismiss these defendants on grounds
    of lack of service and personal jurisdiction because "the docket contains no record that [Mr.
21  Gravelle] has served any of the Doe defendants."  (*Id.* at 20 n.9.)  Mr. Gravelle did not respond
    to this portion of Special Agents' motion.  (*See generally* Resp.)  Accordingly, the court grants
22  this portion of Special Agents' motion related to the Doe defendants and dismisses these
    defendants without prejudice.

ORDER- 43