UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PERRY GRAVELLE,<br><br>              Plaintiff,<br><br>    v.<br><br>JUDY KIANDER, et al.,<br><br>              Defendants. | CASE NO. C13-1911JLR<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION |

## I.    INTRODUCTION

Before the court is Plaintiff's[1] amended motion for reconsideration of the court's order granting summary judgment to Defendants.[2] (Am. Mot. (Dkt. # 91); *see also* SJ

---

[1] On July 21, 2015, Defendants filed a notice of Plaintiff Perry Gravelle's death. (Notice of Death (Dkt. # 46).) On January 15, 2016, the court entered an order permitting Personal Representative Don Koler to substitute as Plaintiff for the decedent pursuant to Federal Rule of Civil Procedure 25. (1/15/16 Order (Dkt. # 79) at 11.)

[2] Plaintiff initially timely filed his motion for reconsideration on April 14, 2015. (Mot. (Dkt. # 90).) One day later, Plaintiff filed the present amended motion. (*See* Am. Mot.)

ORDER- 1

Ord. (Dkt. # 86).) The court has considered the amended motion, the parties' submissions concerning the amended motion, other relevant portions of the record, and the applicable law. Being fully advised,[3] the court DENIES Plaintiff's motion for reconsideration.

## II. ANALYSIS

Motions for reconsideration are disfavored. Local Rules W.D. Wash. LCR 7(h)(1). The court will ordinarily deny such motions unless the moving party demonstrates (1) manifest error in the prior ruling, or (2) new facts or legal authority which could not have been brought to the attention of the court earlier with due diligence. *Id.* All of the evidence Plaintiff cites has been available and part of the record for months. Plaintiff cites no new legal authority and does not challenge the authority upon which the court's summary judgment order relied. Plaintiff had the opportunity in his original briefing on summary judgment and at the hearing to make the arguments he now asserts in his motion for reconsideration. In any event, as discussed below, none of his arguments merit reconsideration of the court's order. Plaintiff made neither of the showings necessary for reconsideration, and there are no other extraordinary circumstances that warrant reconsideration of the court's summary judgment order.

---

Plaintiff apparently realized that the formatting of his initial motion did not comply with the court's local rules. (*See id.* at 1 ("This amends the one filed minutes ago as the wrong version: this has the pleading lines and footers. Apologies to the court and counsel.").) The court accepted Plaintiff's amended motion as timely because it is virtually identical to his original motion except for formatting. (*See* Ord. Dir. Resp. (Dkt. # 93) at 2 n.1.)

[3] No party asked for oral argument, and the court deems this motion to be appropriate for disposition without it. *See* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER- 2

In asserting that the court should reconsider its order, Plaintiff cites portions of the record that have been available for over a year, including excerpts from decedent's February 2015 deposition (Dkt. # 32-5) and the expert report of Dr. Jeffrey Christensen, which was disclosed in April 2015 (Dkt. ## 32 ¶ 12, 34).[4] (*See* Am. Mot. at 3-5.) Instead of citing new evidence, Plaintiff implies that the court erred by not permitting Personal Representative Koler to supplement the record and decedent's briefing concerning Defendants' motions for summary judgment. (*See id.* at 2; *see also* 1/15/16 Order.) Defendants, however, opposed any effort to reopen discovery or to permit additional briefing on their pending motions for summary judgment. (US Resp. (Dkt. # 71) at 5-6.) At the time that Mr. Kohler substituted into this matter as Plaintiff, the discovery cutoff had expired and the parties had fully briefed Defendants' motions for summary judgment. (*See id.*; *see also* 1/15/16 Order at 11.) Further, the decedent was represented by counsel when the summary judgment motions were briefed. (1/15/16 Order at 11.) Although the court permitted limited additional discovery concerning damages, the court agreed with Defendants that discovery concerning liability was closed

---

[4] Plaintiff also cites "Exhibit C (to docket32) [sic]." (Am. Mot. at 3.) This document is a copy of the United States' First Set of Interrogatories and Requests for Production to Plaintiff. (*See* Morehead Decl. (Dkt. # 32) Ex. C.) The court is at a loss to understand how a copy of this document, which does not include any of Plaintiff's responses, supports Plaintiff's motion for reconsideration. Plaintiff may have intended to cite the December 24, 2013, letter from the Federal Bureau of Prisons ("BOP") to the Social Security Administration concerning Plaintiff's administrative tort claim. (*See* Norris Decl. (Dkt. # 40) Ex. 3.) If so, this document also does not support Plaintiff's contention that his administrative tort claim was timely filed against the BOP. Indeed, nothing in Plaintiff's motion for reconsideration demonstrates manifest error in the court's conclusion on summary judgment that the decedent failed to timely serve his administrative claim on BOP. (*See* Am. Mot. at 3; SJ Ord. at 32-35.) Defendants never asserted nor did the court rule that Plaintiff's administrative claim to the Social Security Administration was untimely. (*See generally* US Mot. (Dkt. # 31); Def. Mot. (Dkt # 30); SJ Ord.)

1 and should remain so and that additional briefing on the motions for summary judgment
2 was not warranted.  (*Id.* at 11-12.)

3       Plaintiff never sought reconsideration of the court's January 15, 2016, order (*see*
4 *generally* Dkt.), and the time to file such a motion has long since expired.  *See* Local
5 Rules W.D. Wash. LCR 7(h)(2) ("The motion [for reconsideration] shall be filed within
6 fourteen days after the order to which it relates is filed.").  In any event, Plaintiff fails to
7 demonstrate any error in the court's January 15, 2016, order.[5]

8       The remainder of Plaintiff's motion for reconsideration is addressed to his claim
9 for excessive force.[6]  Plaintiff relies on a portion of the report of Defendants' expert
10 witness, Dr. Jeffrey C. Christian, in which the doctor opines:

---

[5] Plaintiff has not argued that decedent's counsel performed inadequately.  However, even if Plaintiff had advanced this argument, reconsideration of the court's January 15, 2016, order denying additional discovery concerning liability or supplemental briefing on the summary judgment motions is not warranted.  Poor performance by counsel alone does not justify reconsideration of the order.  *See Nelson v. Fed. Way Dep't of Pub. Safety*, No. C06-1142RSL, 2007 WL 1655215, at *2 (W.D. Wash. June 5, 2007) (denying motion for reconsideration despite plaintiff's contention that her former counsel performed inadequately) (citing *Pioneer Inv. Serv. Co. v. Brunswick, Assocs. Ltd.*, 507 U.S. 380, 396 (1993) ("[C]lients must be held accountable for the acts and omissions of their attorneys."); *see also Kramer v. Conway*, 962 F. Supp. 2d 1333, 1357 (N.D. Ga. 2013) ("Alleged inadequate representation by Plaintiff's former counsel is not a basis to alter or amend the Judgment.").  If Plaintiff believes that decedent's prior counsel did not perform adequately, he is not without remedy.  *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962) ("[I]f an attorney's conduct falls substantially below what is reasonable under the circumstances, the client's remedy is against the attorney in a suit for malpractice."); *see also Watson v. Moss*, 619 F.2d 775, 776 (8th Cir. 1981) ("A party . . . does not have any right to a new trial in a civil suit because of inadequate counsel, but has as its remedy a suit against the attorney for malpractice.").

[6] Plaintiff summarily asserts that the court erred in dismissing all his claims (*see* Am. Mot. at 2-3), but fails to provide any specific argument concerning any error other than regarding his claim for excessive force.  Without specific assertions of error, Plaintiff's motion for reconsideration of all his claims is inadequate.  *See* Local Rules W.D. Wash. LCR 7(h)(2) ("The motion [for reconsideration] shall point out with specificity the matters which the movant

> The precise timing of this [Lisfranc] injury [to the right foot] cannot be determined based on the reviewed evidence. Based on records and deposition testimony, the injury most likely took place after the Swedish Medical Center visit and before the plaintiff arrived home after detention. Nevertheless, after the deformed foot was observed by friends the same day after release from detention, it was not medically evaluated for a number of weeks after injury. On a more likely than not basis, the injury occurred from a twisted foot combined with axial loading of body weight placed on the foot.

(Am. Mot. at 4 (quoting Christensen Decl. (Dkt. # 34) Ex. B at 4-5).) Plaintiff asserts that because Defendants' medical expert concluded that the decedent's injury most likely occurred between October 28, 2011, and October 31, 2011, which corresponds to the dates that the decedent was in federal custody, the court should reconsider its order granting summary judgment to Defendants. (*See id.*) The court disagrees.

First, Plaintiff ignores the portion of Dr. Christensen's report in which he concludes that the decedent's injury most likely occurred after the decedent's visit to Swedish Medical Center. (Christensen Decl. Ex. B at 4-5.) Indeed, Dr. Christensen specifically concludes that the injury to the decedent's foot "did not occur at the time of [the decedent's] arrest." (*Id.* at 5.) The decedent alleged that his foot was injured by Special Agents at the time of his arrest and prior to his trip to Swedish Medical Center. (*See* Am. Compl. ¶¶ 12-24.) Thus, Dr. Christensen's testimony concerning the likely timing of the decedent's injury supports the court's reasoning and does not provide a basis for reconsideration.

---

believes were overlooked or misapprehended by the court . . . and the particular modifications being sought in the court's prior ruling."). Therefore, except with regard to Plaintiff's claim for excessive force, the court declines to address Plaintiff's assertion that the court erred in dismissing all of his claims.

ORDER- 5

Further, contrary to the decedent's allegations, Dr. Christensen opines that "[t]he injury pattern seen in this case would not occur with improper placement of a shackle around the ankle" or "by contorting the foot manually by another person." (Christensen Decl. Ex. B at 5.) Rather, the decedent's injury "requires force equivalent to full body weight under moderate velocity, which can occur with a slip or fall." (*Id.*) The violent contortion of a foot, such as described by the decedent, "would have a vastly different fracture pattern not seen in this case." (*Id.*) Dr. Christensen opined that "the [homolateral Lisfranc] injury occurred from a twisted foot combined with axial loading of body weight placed on the foot." (*Id.*) Indeed, Dr. Christensen opined that the decedent's injury was more likely than not caused when the decedent slipped and fell, as the decedent described to two of his own treating physicians on two different occasions before he filed suit asserting different allegations. (*See id.*) As noted in the court's summary judgment order, Plaintiff presented no medical evidence that the decedent's foot injury occurred at the time of his arrest or that the type of injury the decedent suffered had could have been caused by the shackling or twisting of his foot by the agents. (*See* SJ Ord. at 19.) Thus, Dr. Christensen's medical opinion remains undisputed on the record and does not provide a basis for granting reconsideration of the court's summary judgment order.[7]

---

[7] Plaintiff also relies upon the deposition testimony of two of the decedent's friends, one of whom testified that decedent's foot appeared injured when he returned from detention (three days after his arrest) and another who testified that the decedent complained of damage to the decedent's knees, but who did not observe any injury to the decedent's feet. (*See* Morehead Decl. Exs. G at 18:25-19:11, 41:21-25, I at 43:1-22; *see also* Am. Mot. at 5.) This testimony

ORDER- 6

Plaintiff also relies on the portion of Dr. Christensen's report in which the doctor opines that the decedent likely had end stage peripheral neuropathy, which can cause insensate feet.  (Am. Mot. at 4-5; Christensen Decl. Ex. B at 5.)  Plaintiff argues that this condition explains why the decedent did not notice his injury at first and why decedent's injured foot was not diagnosed earlier by either Drs. Ian Doten or Melissa Wolin.  (*See* Am. Mot. at 5 ("This is why the short dr. appointments and [the decedent] himself missed the severity of this injury from the beginning and x-rays should have been taken, like they were 2 months in.").)  However, the decedent never claimed that he was unaware of or could not feel the alleged injury to his foot.  To the contrary, he testified that at the time of his arrest, his foot "snapped and it went slack and just flopped to the side."  (Morehead Decl. Ex. E at 265:17-19.)  Indeed, the decedent specifically alleged that he felt pain at the time of the injury.  (Am. Compl. ¶¶ 16 ("[Decedent] felt something give in his right foot and ankle and a sharp pain which caused his right foot to flop to the right."), 29 (alleging he was "in serious pain" while at the Federal Detention Center in SeaTac, Washington).)  Thus, contrary to Plaintiff's assertion in his amended motion for reconsideration, the fact that the decedent did not complain about foot pain or injury to any physician until months after his arrest—despite multiple opportunities to do so in the immediate aftermath of his arrest—supports Defendants' position and the court's ruling on summary judgment.

---

adds nothing concerning the issue of causation.  Further, the testimony undermines Plaintiff's new assertion that only x-rays could have revealed that the decedent had a broken foot when the decedent saw a doctor on the day of his arrest.  (*See* Am. Mot. at 4 ("[Doctors] . . . would have never seen the sever [sic] fracture of the left foot without x-rays.").)

ORDER- 7

Ultimately, however, the evidence concerning the decedent's pain in his foot is superfluous because two physicians observed the decedent's feet during the relevant time period and observed no injury to his feet or ankles.  (Morehead Decl. Ex. B at 23:14-25:25 (Dr. Doten testifying that he examined the decedent's bare feet and recorded no sign of a broken foot or other injury and would have recorded it had he seen any such sign), 27:25-28:10 (Dr. Doten testifying that the decedent was "discharged well appearing, ambulatory"); Gugin Decl. (Dkt. # 45) Ex. A at 26:5-21, 44:3-17 (Dr. Doten testifying that the decedent's gait was normal and he would have noticed if decedent's toenails had been torn off or if decedent had swelling indicating a broken foot or ankle); Morehead Decl. Ex. H at 33:2-15, 36:6-14 (Dr. Wolin testifying that she observed equal swelling in both feet which was inconsistent with a break in one foot, that neither foot appeared broken, and that she would have documented missing toenails in the decedent's record).  Plaintiff provides no medical testimony in contravention to the testimony of these physicians.  (*See generally* Dkt.)  Plaintiff's attempt to manufacture contradictory evidence by pointing to evidence of the decedent's peripheral neuropathy is unavailing because the decedent testified that he felt his injury at the time it allegedly occurred and alleged that he experienced pain in his foot.  (Morehead Decl. Ex. E at 265:17-19; Am. Compl. ¶¶ 16, 29.)  Thus, evidence that the decedent suffered from peripheral neuropathy does not create a triable issue of fact concerning the uncontested medical testimony of Drs. Wolin and Doten that the decedent's feet and ankles were uninjured immediately following his arrest.

Plaintiff also attempts to undermine the opinions and observations of Drs. Doten and Wolin by arguing that his medical appointments with these providers were "short" in duration. (Am. Mot. at 4.) Plaintiff, however, fails to support this assertion with any citation to the record.[8] (*See id.*) Plaintiff also argues that Drs. Doten and Wolin should have taken x-rays of the decedent's feet, which would have revealed the decedent's injury, and impliedly argues that Drs. Doten and Wolin breached the standard of care. (*See id.*) Plaintiff's lay opinion about what medical tests the decedent's physicians should have ordered and what those tests might have shown is without foundation. *See* Fed. R. Civ. P. 701; *Kielkopf v. United States*, No. C05-5831 FDB, 2007 WL 765209, at *2 (W.D. Wash. Mar. 9, 2007) ("In a medical negligence action, expert testimony is required to establish the standard of care and most aspects of causation.") (citing *Seybold v. Neu*, 19 P.3d 1068, 1074 (Wash. Ct. App. 2001)). Accordingly, Plaintiff's opinions on those issues provide no basis for reconsideration of the court's order.

---

[8] In his "Surrebuttal to Defendants' Surreply," Plaintiff belatedly attempts to support this assertion with citations to the record. (Surrebuttal (Dkt. # 97) at 3.) Specifically, Plaintiff points to the decedent's testimony that he failed to apprise Dr. Doten of any injuries to his leg, knee, ankle, or foot because he "didn't have time," and that the Special Agents kept telling the doctor that they needed "to get out of here" and "to step it up." (*See* Gugin Decl. Ex. B at 176:4-13.) First, Plaintiff's filing of a surrebuttal in response to Defendant's surreply is in violation of the court's Local Rules. *See* Local Rules W.D. Wash. LCR 7(g)(4) ("No response [to a surreply] shall be filed unless requested by the court."). Second, Plaintiff's belated citations to the record are untimely because Plaintiff did not provide them at the time he filed his motion for reconsideration but rather nearly a month later. *See id.* LCR 7(h)(2). Even if the citations were timely, however, they do not provide a basis for reconsideration of the court's order. Irrespective of the length of the decedent's medical appointments, both Drs. Doten and Wolin testified that they specifically examined the decedent's feet and observed no injury. *See supra* at 8. Plaintiff provides no medical testimony to the contrary.

The decedent had ample opportunity to present expert medical testimony in opposition to Defendants' motions for summary judgment and to rebut the testimony of Drs. Christensen, Wolin, and Doten. He failed to do so. (*See generally* Dkt.) The opinions of these doctors now stand as unrebutted evidence that (1) the decedent showed no signs of a foot injury following his arrest and, (2) the injury, more likely than not, did not occur as the decedent alleged. Plaintiff's unsupported arguments to the contrary in his present amended motion do not warrant reconsideration of the court's prior order granting summary judgment. *See Thompson v. Frank Luna*, 441 F. App'x 528, 529 (9th Cir. 2011) ("The district court properly granted summary judgment on [the plaintiff's] state law claims because [the plaintiff] failed to rebut with expert medical testimony defendants' showing that they met the appropriate standard of care and did not cause or aggravate his hand injuries.").[9]

//
//
//
//

---

[9] Plaintiff also notes that the decedent complained after-the-fact to various officials about his injury. (Am. Mot. at 5.) Defendants do not dispute that the decedent made these complaints, but the decedent's complaints to officials are irrelevant to the issue of causation, on which the court's summary judgment order concerning excessive force rests. (*See* SJ Ord. at 16 ("Special Agents Kiander and Huynh are entitled to summary judgment on Mr. Gravelle's excessive force claim because there is insufficient evidence from which any reasonable juror could conclude that Mr. Gravelle suffered any injury to his feet as a result of his arrest.").)

ORDER- 10

## III. CONCLUSION

Based on the foregoing analysis, the court DENIES Plaintiff's amended motion for reconsideration (Dkt. # 91).[10]

Dated this 19th day of May, 2016.

JAMES L. ROBART
United States District Judge

---

[10] Nothing in Plaintiff's reply memorandum alters the court's view that reconsideration of its summary judgment order is unwarranted. In his reply memorandum, Plaintiff raises new arguments that he did not initially raise in his amended motion. (*See* Reply (Dkt. # 95).) The court declines to consider arguments raised for the first time on reply. *FT Travel--New York, LLC v. Your Travel Ctr., Inc.*, 112 F. Supp. 3d 1063, 1079 (C.D. Cal. 2015) (collecting cases declining to consider arguments raised for the first time in reply). In addition, Plaintiff's assertions in reply concerning what alleged medical evidence may demonstrate at trial are based on pure speculation and unsupported by any citation to the record. (*See* Reply at 2.) "Argument without evidence is hollow rhetoric that cannot defeat summary judgment." *Teamsters Local Union No. 117 v. Wash. Dep't of Corr.*, 789 F.3d 979, 994 (9th Cir. 2015) (explaining that a party cannot defeat summary judgment with the hope of evidence to be developed at trial or argument unsupported by evidence). Finally, the court declines Plaintiff's request in his reply memorandum to take judicial notice of an entry in Wikipedia. (*See* Reply at 2); *In re Yagman*, 473 F. App'x 800, 801 n.1 (9th Cir. 2012) (declining to take judicial notice of Wikipedia page and citing Fed. R. Evid. 201(b)(2)).